COMMONWEALTH OF MASSACHUSETTS
SUFFOLK COUNTY SUPERIOR COURT

| | |
|---|---|
| REBECCA COLLINS,<br>       Plaintiff,<br><br>v.<br><br>TUFTS MEDICAL CENTER PARENT, AND<br>       CATHY MCCUE,<br>       Defendants. | C. A. No. _____ |

# COMPLAINT

## Introduction

1. By this action, Plaintiff Rebecca Collins seeks damages under the Massachusetts Fair Employment Practices Act, M.G.L. c. 151B and the Workers' Compensation Act, M.G.L. c. 152 s. 75B. Collins alleges disability discrimination and retaliation.

## Parties

2. Plaintiff Rebecca Collins ("Collins") is a former employee of Tufts and a resident of Derry, New Hampshire.

3. Defendant Tufts Medical Center Parent ("Tufts") is a non-profit corporation with a principle place of business at 800 Washington Street, Boston, MA 02111 with six or more employees.

4. Defendant Cathy McCue ("McCue") is employed by Tufts as a Nurse Manager. Upon information and belief, McCue is a resident of Weymouth, Massachusetts.

## Procedural History

5. This Court has jurisdiction over Collin's discrimination and retaliation claims pursuant to M.G.L. c. 151B s. 9.

6. Collins electronically filed a Charge of Discrimination with the Massachusetts Commission Against Discrimination ("MCAD") on July 27, 2020 and the matter was docketed on August 11, 2020. Collins has tolled the 90-day requirement to file in Superior Court.

7. This court has jurisdiction over M.G.L. c. 152 c. 75(B) claims pursuant to s. 75B (2).

**Facts**

8. Complainant, Rebecca Collins ("Collins"), is a Registered Nurse formerly employed by Tufts Medical Center ("Tufts"). Collins worked in the lock-down psychiatric unit from 2013 until she was injured by a patient and went on leave on October 1, 2018. Tufts terminated her on October 31, 2019.

9. Collins is a highly experienced nurse. She consistently received positive feedback and work evaluations during her tenure at Tufts. Collins greatly valued her work at Tufts advocating for psychiatric patients. She is an extremely hard worker and has at times held three jobs in order to provide for her family.

10. Collins suffered an injury to her wrist on September 30, 2018, after an incident at work when a patient attacked her. The next day, she visited her doctor, who wrote her a note indicating that she would be absent from work. She applied for a Leave of Absence, effective October 1, 2018.

11. Collins was ultimately diagnosed with ulnar abutment syndrome in her wrist, which at times causes her severe pain and impacts her range of motion. She also has diagnoses of

Post Traumatic Stress Disorder ("PTSD") and adjustment disorder due to both the patient attack itself and to Tufts' subsequent discriminatory behavior.

12. While she was out on leave, Collins spoke with Sally Espino ("Espino"), Leave Administrator and Human Resources Generalist, on the telephone. Espino explained to Collins that she would remain employed by Tufts while on a Leave of Absence. Espino indicated that Collins would be able to apply for other positions when she was ready to return to work. Collins asked Espino if she would be able to return to her same position, and she responded that she could, but only if there was an opening. Espino indicated that Tufts might post Collin's job as early as April 1st, in order to look for a replacement.

13. Collins' injury required surgery, which occurred on January 23, 2019. After several weeks of recuperating from surgery, Collins indicated to her employer in early May of 2019 that she was ready to return to work. On or about May 2, 2019, Collins had a conversation with Nurse Manager Cathy McCue ("McCue"). McCue told Collins that she couldn't be put on the schedule until she was "cleared" by the Employee Health Department. Collins therefore made an appointment with Employee Health Nurse Susan Goucher ("Goucher") for the following week.

14. On May 7th, Collins met in person with Goucher and McCue. Goucher examined Collin's wrist and indicated to Collins that she thought she would be able to return to work.

15. During the same meeting, McCue asked Collins whether she had yet obtained a doctor's note to "clear" her to come back to work. McCue stated that the note had to specify "with or without restrictions." Collins then asked if she would be allowed to return with restrictions, and McCue responded: "No. You [Collins] have to be 100 percent". Also

during this May 7th meeting, Collins and McCue discussed which dates Collins would work during the upcoming month. Goucher informed Collins that it would be up to her manager (McCue) for a final decision as to whether an accommodation would be provided. Collins left this meeting feeling optimistic about an imminent return to work.

16. On the same day, on or about May 7th, Collins also met with Espino. Collins indicated to Espino that she was ready to come back to work and was excited to get back to the unit.

17. Collins was unable to get a doctor's note without restrictions. She called her doctor's office on May 8th and explained that her employer was requiring her to have a letter without restrictions in order to return to work. Her doctor, Crawford Campbell, then sent a doctor's note dated May 2nd, 2020.

18. A doctor's note of Crawford Campbell, M.D., dated April 30, 2019 states that Collins could return to work on May 13, 2019 and that Dr. Campbell requests that Collins wear Kinesio tape on her wrist while at work.

19. A doctor's note dated May 2, 2019 from Crawford Campbell, M.D. states that Dr. Campbell had "originally thought Ms. Collins could try to return to work wearing wrist wrap or brace and that she would have to be very careful in any restraint situations. She [Ms. Collins] has recently learned that her work will not allow her to return with any restrictions. Because of this new development, she should not return to work…" Despite this note being dated May 2, 2019, Collins recalls receiving this note after the May 7th meeting described above.

20. On May 9th, 2020, Collins left a voicemail for Espino regarding her return to work. Collins subsequently telephoned Goucher, asking to return to work with the restrictions

indicated in her doctor's note. During this phone call, Goucher stated to Collins that she could not return to work with the restrictions required in her doctor's note.

21. Although Collins was able to perform the basic functions of her job, and in fact, could perform every function of her job, as long as she was wearing tape or a brace, Tufts management told her that she could not return to work. Collins never received any follow up calls from Employee Health, HR, or McCue indicating that she could come back to work, or offering her other positions. No one discussed alternative accommodations with her or whether or not the department or the institution as a whole could or could not accommodate the restrictions her doctor required for her.

22. The Collective Bargaining Agreement ("CBA") between Tufts and the Nurses Association states that a nurse may take a leave of absence due to an industrial accident "until approved by an attending physician for return to work."

23. Collins did not receive any offers to work in alternative positions that would not require performing restraints or lifting patients, which were the two functions that she could not perform safely without wearing tape or a brace, according to her doctor. Collins had previously been trained and certified as a Crisis Prevention and Intervention ("CPI") Instructor since 2014, and had previously provided training to the department in addition to her shift work. However, she was not offered this work any time after she indicated she was ready to return to work in May of 2019.

24. Ms. Collins was shocked by Tufts' decision to prohibit her from returning to work, not only because she felt she could return to work and do her job well, but also because there had been other employees on the unit that had returned to work with assistive devices or other accommodations.

25. For instance, Wendy MacDonald worked in Collin's unit and was granted an accommodation to wear a boot on an injured foot during a shift. Granis Stuart was granted an accommodation to wear a wrist brace while working on the unit. Donna Pasquantonio, upon information and belief, called out due to an injury and McCue called her and told her she was required to come in, and was given a reduced assignment by McCue. Pasquantonio was granted an accommodation to wear a wrist brace during this time. Chris Cordair, a security officer who sometimes worked on the unit, wore a cast or other immobility device on his arm while working. Jesse Tate, a Unit Coordinator, was granted an accommodation of a wheeled scooter due to an ankle injury. All of these accommodations took place on the same lock down psychiatric unit that Collins worked on, during the period she was employed at Tufts.

26. Additionally, the unit occasionally employed Patient Care Attendants ("PCAs") for those patients who required a 1:1. On multiple occasions, Collins observed McCue allow PCAs to work on the unit, who required a cane for ambulating. It was department policy for these PCAs to leave their canes behind the nursing desk, due to a concern that a patient could potentially cause harm with a cane, without any consideration as to whether the PCAs could safely work without their assistive devices.

27. Due to the fact that Collins was injured on the job, and also that Tufts refused her an accommodation, Collins pursued Workers' Compensation Benefits.

28. On July 9, 2019, Collins received a letter from Espino stating that she had begun her Leave of Absence due to "her own medical condition," that Tufts recently had begun the recruitment process to fill her position, and that the fact that the recruitment process had begun did not impact Collins' status as an employee of Tufts. Additionally, Espino

wrote: "If you should receive a clearance from your doctor to return to work, please notify me. At that time you can begin to work with our Human Resources Team to seek out available open positions for which you may be qualified." At the time Collins received the July 9 letter, Espino was already aware that Collins' doctor had given Collins clearance to return to work, albeit with the restriction of wearing tape or a brace.

29. In early November of 2019, Collins was informed by mail that she had been terminated from her position effective October 31, 2019. Espino's letter notifying Collins of this decision stated that "Due to your [Collins] being out of work at Tufts Medical Center for over a period of a year, the policy is to terminate your employment." There is no indication that anyone engaged in an interactive dialogue with Collins at this time to determine whether there were reasonable accommodations that could be implemented to allow her to return to work and perform the essential functions of her job, or whether there were other positions available to Collins for which she could apply. Collins believes that her colleague, Mindi Santini, was terminated the same day of October 31, 2019, despite being injured and starting her Leave of Absence from Tufts during a different time period than Collins.

## COUNT I
## M.G.L. c. 151B HANDICAP DISCRIMINATION

30. Plaintiff incorporates by reference all of the above factual allegations.

31. Tufts is an employer under and subject to M.G.L. C. 151B.

32. Collins' diagnosis of ulnar abutment qualified her as a handicapped individual within the meaning of M.G.L. c. 151B. Collins has been deemed disabled in order to receive Workers' Compensation benefits.

33. Collins had a qualifying disability or was perceived by Defendants as having a disability at all times relevant to this Complaint.

34. Collins was qualified for her job as a nurse and able to perform the essential functions of her job with or without reasonable accommodation.

35. Defendant refused to provide Collins with a reasonable accommodation.

36. Defendant terminated Collins because of her disability.

37. Collins has suffered financial and emotional damages due to Defendants' unlawful behavior.

## COUNT II
## M.G.L. c. 151B FAILURE TO ACCOMMODATE

38. Plaintiff incorporates by reference all of the above factual allegations.

39. Tufts is an employer under and subject to M.G.L. c. 151B.

40. Collins' diagnosis of ulnar abutment qualified her as a handicapped individual within the meaning of M.G.L. c. 151B.

41. Collins had a qualifying disability or was perceived by Defendants as having a disability at all times relevant to this Complaint.

42. Collins was qualified for her job as a nurse and able to perform the essential functions of her job with or without reasonable accommodation.

43. Collins requested a reasonable accommodation, namely, that she be allowed to wear a brace or supportive tape on her wrist while at work.

44. Defendant refused Collins' request for a reasonable accommodation, failed to engage in any interactive dialog about whether a reasonable accommodation could be provided to Collins, failed to provide Collins with any accommodation, and terminated Collins' employment because of her disability.

45. Collins has suffered financial and emotional damages due to Defendants' unlawful behavior.

## COUNT III
## M.G.L. c. 151B RETALIATION

46. Plaintiff incorporates by reference all of the above factual allegations.

47. Tufts is an employer under and subject to M.G.L. c. 151B.

48. Collins' diagnosis of lateral ulnar abutment qualified her as a handicapped individual within the meaning of M.G.L. c. 151B.

49. Collins had a qualifying disability or was perceived by Defendants as having a disability at all times relevant to this Complaint.

50. Collins was qualified for her job as a nurse and able to perform the essential functions of her job with or without reasonable accommodation.

51. Collins engaged in protected conduct under M.G.L. c. 151B, including but not limited to requesting an accommodation to assist with her job and requesting to be returned to work.

52. Collins suffered adverse employment actions, including but not limited to termination of employment by the Defendant, because of her request for a reasonable accommodation and for attempting to avail herself of her rights under M.G.L. c. 151B.

53. Collins has suffered financial and emotional damages due to Defendants' unlawful behavior.

## COUNT IV
## M.G.L. c. 152 s. 75B DISCRIMINATION

54. Plaintiff incorporates by reference all of the above factual allegations.

55. Tufts is an employer under and subject to M.G.L. c. 151B and M.G.L. c. 152.

56. Collins' diagnosis of ulnar abutment qualified her as a handicapped individual within the meaning of M.G.L. c. 151B.

57. Collins had a qualifying disability or was perceived by Defendants as having a disability at all times relevant to this Complaint.

58. Collins was qualified for her job as a nurse and able to perform the essential functions of her job with or without reasonable accommodation.

59. Collins filed for Workers' Compensation benefits shortly after she began her Leave of Absence in October of 2018.

60. Tufts terminated Collins due to her filing of Workers' Compensation benefits and for attempting to avail herself of her rights under M.G.L. c. 152.

61. Collins has suffered financial damages due to Defendants' unlawful behavior.

### **Prayer for Relief**

WHEREFORE, Plaintiff respectfully requests that the Court:

a. Compensatory damages, including economic losses and emotional distress;

b. Multiple and liquidated damages;

c. Punitive damages;

d. Attorneys' fees;

e. Front and back pay;

f. Prejudgment interest;

g. Postjudgment interest;

h. Costs of this action; and

i. Any such further relief as the Court deems fair and just.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL CLAIMS, COUNTS, AND ISSUES SO TRIABLE**.

Respectfully submitted,
REBECCA COLLINS,
By her Attorneys,



_____
Caitlin Beatty, Esq. (BBO #679228)
Corinne Hood Greene, Esq. (BBO #654311)
Greene & Hafer, LLC
529 Main St., Ste. 200
Charlestown, MA 02129
Ph. 617-396-4600
cbeatty@greeneandhafer.com
cgreene@greeneandhafer.com

COMMONWEALTH OF MASSACHUSETTS
SUFFOLK COUNTY SUPERIOR COURT

|  |  |
|---|---|
| REBECCA COLLINS, | ) |
| Plaintiff, | ) |
| v. | ) C. A. No. 2084CV02656 |
| TUFTS MEDICAL CENTER PARENT, AND CATHY MCCUE, | ) |
| Defendants. | ) EFILED 12/8/2020 |

ACCEPTANCE OF SERVICE

Counsel for the Defendants hereby accepts service of the Summons and Complaint in this matter on behalf of Defendant Tufts Medical Center Parent and Defendant Cathy McCue.

| /s/Caitlin Beatty | /s/ Francis J. Bingham |
|---|---|
| Caitlin Beatty, Esq. (BBO #679228) | Francis Bingham, Esq. (BBO # 682502) |
| Greene & Hafer, LLC | Littler Mendelson, P.C. |
| 529 Main St., Ste. 200 | One International Place, Suite 2700 |
| Charlestown, MA 02129 | Boston, MA 02110 |
| Ph. 617-249-4436 | Ph. 617-378-6075 |
| cbeatty@greeneandhafer.com | FBingham@littler.com |

Dated: 12/1/2020     Dated: 12/04/20

# CERTIFICATE OF SERVICE

      I hereby certify that the above document was sent via electronic mail and first class mail to Defendants' counsel on December 8, 2020.

                                        _____
                                        **Caitlin Beatty**